# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Federated Service Insurance Company | Bridestone Bandag LLC |

**(b)** County of Residence of First Listed Plaintiff   Steele (Minn.)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Muscatine (Iowa)
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Anthony L. Miscioscia, Esq., White and Williams LLP
1650 Market St., Ste. 1800, Phila., PA 19103
(215)864-6356

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332(a)(1); 28 USC 2201(a)
Brief description of cause:
Declaratory Judgment; Insurance Coverage

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   Excess of $75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE  2/25/2019

SIGNATURE OF ATTORNEY OF RECORD

**FEB 25 2019**

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

19   820

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 121 East Park Square, Owatonnya, Minn. 55060

Address of Defendant: 2000 Bandag Drive, Muscatine, Iowa 52761

Place of Accident, Incident or Transaction: Pennsylvania

---

*RELATED CASE, IF ANY:*

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 2/25/2019 _____ *Attorney-at-Law / Pro Se Plaintiff*   69215 *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.**  *Diversity Jurisdiction Cases:*

☑ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Anthony L. Miscioscia, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

FEB 25 2019

DATE: 2/25/2019 _____ *Attorney-at-Law / Pro Se Plaintiff*   69215 *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Federated Service Insurance Company | : | CIVIL ACTION |
| v. | : | |
| Bridgestone Bandag LLC | : | NO.  19   820 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                              ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (X)

| 2/25/2019 | Anthony L. Miscioscia | Federated Service Ins. Co. |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-863-6356 | 215-789-7659 | miscioscia@whiteandwilliams.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

FEB 25 2019




## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

FEDERATED SERVICE INSURANCE
COMPANY,

          Plaintiff

v.

BRIDGESTONE BANDAG LLC,

          Defendant

**19      820**

Civil Action No. _____

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Federated Service Insurance Company, by and through its attorneys, files this Complaint for Declaratory Judgment against Defendant Bridgestone Bandag LLC and, in support, alleges as follows:

## I.    INTRODUCTION

1.    This is an insurance coverage declaratory judgment action in which Federated Service Insurance Company ("Federated") seeks a declaration that is has no duty to indemnify a putative additional insured, Bridgestone Bandag LLC ("Bandag"), for amounts Bandag agreed to pay to settle bodily injury claims asserted against Bandag in the underlying actions, *Shanika Lakiyah Brown, et al. v. Silvi Concrete Products, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, October Term, 2015, No. 00925, and *Karen Thomas v. Silvi Concrete Products,* et al., Court of Common Pleas, Philadelphia County, Pennsylvania, November Term, 2016, No. 01727 ("Underlying Actions").

2.      Federated issued an insurance policy (the "McCarthy Policy") to its named insured, McCarthy Tire Service Company Inc. and McCarthy Tire Service Company of New York Inc. (collectively "McCarthy").

3.      Bandag, McCarthy, and others were named as defendants in the Underlying Actions.

4.      Federated defended McCarthy in the Underlying Actions, and settled the claims asserted against McCarthy, without any admission or finding of liability on the part of McCarthy.

5.      Federated also defended Bandag in the Underlying Actions, and paid Bandag's attorneys' fees and defense costs.

6.      Accordingly, this lawsuit involves a dispute over Federated's duty, if any, to indemnify Bandag—not Federated's duty to defend.

7.      Bandag also settled the claims asserted against it in the Underlying Actions, without any admission or finding of liability on the part of Bandag.

8.      Federated has denied coverage for Bandag's settlement (the "Bandag Settlement"), but Bandag continues to assert that Federated must indemnify Bandag for the Bandag Settlement.

9.      Because all parties to the Underlying Actions did not settle, the Underlying Actions were tried to a jury, and the jury, on its verdict sheet, determined that neither BATO/Bandag nor McCarthy were liable for the underlying plaintiffs' injuries. The jury did not assign any percentage of liability to either McCarthy or Bandag.

10.     Based on the jury's verdict, Bandag has not established and cannot establish that the Bandag Settlement was paid on account of bodily injury "caused, in whole or in part, by . . . [McCarthy's] acts or omissions . . . in the performance of [McCarthy's] ongoing operations for [Bandag]"—as is required for Bandag to be an additional insured to the Federated Policy.

2

11.    For that reason and those detailed more fully below, Federated has no duty to indemnify Bandag for the Bandag Settlement.

12.    Accordingly, Federated is entitled to a declaration that it has no duty under the McCarthy Policy to indemnify Bandag for the Bandag Settlement.

## II.   PARTIES

13.    Federated Service Insurance Company ("Federated") is a corporation that was incorporated in the State of Minnesota and maintains a principal place of business located at 121 East Park Square, Owatonna, Minnesota 55060.

14.    Bridgestone Bandag LLC ("Bandag") is a limited liability company that was registered as such under the laws of the State of Iowa and maintains a principal place of business located at 2000 Bandag Drive, Muscatine, Iowa 52761.

15.    Bandag is a wholly-owned subsidiary of Bridgestone Americas Tire Operations LLC ("BATO") which, upon information and belief, is Bandag's sole member.

16.    BATO is a wholly-owned subsidiary of Bridgestone Americas Inc. ("Bridgestone") which, upon information and belief, is BATO's sole member.

17.    Bridgestone is a corporation that was incorporated in the State of Nevada and maintains a principal place of business located at 200 4th Avenue South, Nashville, Tennessee 37201.

## III.   SUBJECT MATTER JURISDICTION

18.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

3

19.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, because the amount which Bandag seeks to recover from Federated (*i.e.*, the Bandag Settlement) exceeds $75,000.

20.     The matter is between citizens of different states because:

a.      Federated is a citizen of Minnesota, where it was incorporated and it maintains its principal place of business; and

b.      Bandag is a citizen of Nevada, where Bridgestone (the sole member of BATO, which is the sole member of Bandag) was incorporated, and/or Tennessee, where Bridgestone maintains its principal place of business.

21.     This Court also has subject matter jurisdiction of this matter pursuant to the DECLARATORY JUDGMENTS ACT, 28 U.S.C. § 2201(a), because this matter presents a case of actual controversy.

22.     This matter presents a case of actual controversy because Bandag disagrees with Federated's declination of coverage, and continues to seek indemnity from Federated under the McCarthy Policy for the Bandag Settlement.

## IV.     **PERSONAL JURISDICTION**

23.     The Court may exercise either specific or general personal jurisdiction over Bandag for the same reasons that the Philadelphia County Court of Common Pleas exercised personal jurisdiction over Bandag in the Underlying Actions.

24.     Alternatively, to the extent not examined in the Underlying Actions, the Court may exercise personal jurisdiction over Bandag for additional reasons.

4

25.    The Court may exercise specific personal jurisdiction over Bandag because this matter relates to or arises out of the Bandag Settlement that Bandag entered into with the plaintiffs in the Underlying Actions, which were venued within this District.

26.    Also, the insurance policy under which Bandag seeks indemnification for the Bandag Settlement was delivered in Pennsylvania to a Pennsylvania-based insured, McCarthy.

27.    In this coverage action, Federated seeks a declaration that it does not owe Bandag indemnity under the McCarthy Policy for the Bandag Settlement.

28.    The Court may also exercise general personal jurisdiction over Bandag because Bandag's contacts with the Commonwealth of Pennsylvania are continuous and systematic.

29.    Bandag's contacts with Pennsylvania are continuous and systematic because, among other things and upon information and belief, Bandag contracts, licenses, and/or does business with at least 10 Bandag franchise dealerships in Pennsylvania, including in the cities/towns of Yeagertown, Clearfield, Duncansville, Du Bois, Williamsport, Watsontown, Carlisle, Harrisburg, Cleona, and Hagerstown.

## V.    **VENUE**

30.    Venue is proper in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. §1391(b)(1) or (b)(2), because Bandag is deemed to reside in this District and a substantial part of the events or omissions giving rise to Federated's claim occurred in the Eastern District of Pennsylvania.

31.    Bandag is deemed to reside in this District because it is an entity with the capacity to sue and be sued in its common name under applicable law, and, as previously alleged, Bandag is subject to the Court's personal jurisdiction with respect to the civil action in question. 28 U.S.C. §1391(c)(2).

32.     A substantial part of the events or omissions giving rise to Federated's claim occurred in the Eastern District of Pennsylvania because the Underlying Actions, out of which this action arises, were based in this District (Philadelphia County Court of Common Pleas), and the Bandag Settlement, for which Bandag seeks indemnity under the McCarthy Policy, was, at least in part, negotiated and finalized in this District.

## VI.     FACTUAL BACKGROUND

### A.     The McCarthy Policy Issued By Federated

33.     Federated issued a multiple coverage part policy to McCarthy Tire Service Company Inc. and McCarthy Tire Service Company of New York Inc. effective for the period of January 1, 2015 to January 1, 2016 (the "McCarthy Policy").

34.     A true and correct copy of relevant portions of the McCarthy Policy is attached as Exhibit "A."

35.     The McCarthy Policy's commercial general liability coverage part ("CGL Part") provides certain coverage subject to an each occurrence limit of $1,000,000, a products/completed operations aggregate limit of $2,000,000, and a general aggregate limit of $2,000,000.

36.     The McCarthy Policy's commercial umbrella liability coverage part ("Umbrella Part") provides certain coverage subject to a $20,000,000 limit and a $20,000,000 aggregate limit. However, even if Bandag were an additional insured (which is denied), Bandag is not entitled to coverage for an amount more than the amount Bandag required in its franchise agreement with McCarthy.

37.     The McCarthy Policy's CGL Part contains an endorsement titled "Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required In Construction Agreement with You" (the "AI Endorsement"), which states:

6

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  **Section II - Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.  Your acts or omissions; or

2.  The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

1.  Only applies to the extent permitted by law; and

2.  Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

B.  With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1.  "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

    a.  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

7

    **b.**      Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

**2.**      "Bodily injury" or "property damage" occurring after:

    **a.**      All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

    **b.**      That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.**      With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.**      Required by the contract or agreement you have entered into with the additional insured; or

**2.**      Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

8

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

38.     The McCarthy Policy's CGL Part also contains "other insurance" provisions, stating in part that:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

* * *

**4.      Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.      Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.      Excess Insurance**

**(1)**     This insurance is excess over:

**(a)**     Any of the other insurance, whether primary, excess, contingent or on any other basis:

* * *

**(iv)**    If the loss arises out of the maintenance or use of aircraft, "autos," or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury and Property Damage Liability.

**(2)**     When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the

9

insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3)     When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a)     The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b)     The total of all deductible and self-insured amounts under all that other insurance.

(4)     We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.     Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

39.     The McCarthy Policy's CGL Part contains an endorsement titled "Primary And Noncontributory – Other Insurance Condition" (the "Other Insurance Endorsement") which adds the following to the CGL Part's "Other Insurance" provisions:

10

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

> **Primary And Noncontributory Insurance**
>
> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:
>
> **(1)** The additional insured is a Named Insured under such other insurance; and
>
> **(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

40.     The Other Insurance Endorsement does not apply because McCarthy never agreed in writing in a contract or agreement that the insurance provided by the McCarthy Policy would be primary and would not seek contribution from any other insurance available to Bandag.

41.     The McCarthy Policy's Umbrella Part provides, in relevant part:

## SECTION IV. WHO IS AN INSURED

*   *   *

> **A.**     With respect to **A. EXCESS LIABILITY COVERAGES**, refer to the applicable "underlying insurance" to determine who is an insured. However:

*   *   *

> **2.**     Additional insureds on the "underlying insurance" are not additional insureds on the Commercial Umbrella Policy. However, if:

11

a. the Named Insured is required by the terms of a written contract to name a person or organization as an additional insured; and

b. that written contract was executed prior to the commencement of the activity called for in the contract; then the person or organization specified in the written contract is an additional insured on the Commercial Umbrella Policy subject to the terms and conditions of the additional insured endorsement on the "underlying insurance".

42. The McCarthy Policy's Umbrella Part has "other insurance" terms stating that:

## SECTION VII. CONDITIONS

\* \* \*

**J.     Other Insurance**

The coverage provided under this policy is excess over any other insurance or self insurance which covers any part of the injury or damage except insurance written specifically as excess coverage over the limits of this policy.

**B.     The Bandag-McCarthy Franchise Agreements**

43. In November 2009, Bridgestone Bandag LLC entered into "Bandag Dealer Franchise Agreements" with McCarthy Tire Service Company Inc. and McCarthy Tire Service Company of New York Inc. (the "2009 Franchise Agreements").

44. The "2009 Franchise Agreements" contained the following terms:

\* \* \*

To make this Agreement shorter and easier to understand, the word:

"Process" means our proprietary method of retreading commercial vehicle tires using our materials and methods (certain of which may be the subject of one or more patents);

\* \* \*

12

"PSIP" means Bandag programs, services, information and products;

"System" means the Process and the PSIP, together, as used and offered by Bandag Dealers;

\* \* \*

3.      GRANT AND ACCEPTANCE OF FRANCHISE

3.1.    Franchise and Territory. We grant you a non-exclusive franchise to use the System and the Licensed Marks to operate a Dealership, at a location to which we consent within the AOO, which (i) sells Products to commercial and fleet customers in the AOO ("Sales Facility"), and (ii) if and where designated in Exhibit B, uses the System and Materials you purchase from us produce Products which you sell to commercial and fleet customers in the AOO ("Production Facility"). Under this Agreement, you may use certain patents we or our affiliates or subsidiaries own, and periodically designate (entirely or by individual claim) as part of the System, but you may use them only to use the System to operate your Dealership under this Agreement, and only for so long as this Agreement remains in effect and the designated patent(s) both remain in effect and are designated by us as part of the System.

\* \* \*

3.2.    Term and Renewal. This Agreement is for five years . . . .

\* \* \*

4.1.    Dealership Management. You, or your qualified manager, must manage the day-to-day operations of your Dealership on a continuous, full-time basis.

4.2.    Business Equity. We recognize that you are an independent business owner with a desire to build, protect, and pass on business equity. Although we will use our commercially reasonable best efforts to support you in accordance with this agreement (see Section 5.1), you are ultimately responsible for your performance and for building equity in your Dealership business.

\* \* \*

13

7.12.   <u>Insurance</u>. You agree to maintain (i) insurance coverage required by law, (ii) commercial general liability insurance including products liability, completed operations, contractual liability, and (iii) motor vehicle liability insurance. The required limits for commercial general liability and motor vehicle liability shall each be a minimum of $2,000,000.00 combined single-limit coverage for bodily injury and property damage, or such higher limit as we may set periodically. Insurance shall be with insurers and on forms acceptable to us, shall name us as an additional insured, and waive subrogation. You will give us a certificate of current insurance coverage upon execution of this agreement, and annually thereafter. You will reimburse us promptly if we buy such insurance because you fail to do so.

* * *

11.6.   <u>Relationships</u>. You are an independent contractor, not the employee, agent, partner or joint venture of Bandag. This Agreement does not create a fiduciary relationship. No person may acquire any interest in or under this Agreement except in accordance with Section 8 or Section 4.3. No other person, except our affiliate, is intended to be a beneficiary of this Agreement. If Dealer is more than one person, all are jointly and severally liable hereunder.

45.     Upon information and belief, the terms of the 2009 Franchise Agreements terminated before the accident at issue in the Underlying Actions.

46.     Upon further information and belief, McCarthy entered into other, later Franchise Agreements with Bandag, which are believed to contain similar provisions.

47.     However, to the extent that later Franchise Agreements do not require that McCarthy name Bandag as an additional insured to the McCarthy Policy, Federated reserves all rights to further deny coverage to Bandag due to the lack of a written agreement requiring such coverage for Bandag for purposes of the accident at issue.

14

C.     **The Underlying Actions**

48.     This coverage action arises out of Bandag's demand for indemnity under the McCarthy Policy that Federated pay for the Bandag Settlement agreed to by Bandag in the Underlying Actions.

49.     The Underlying Actions arose out of a motor vehicle accident that occurred on July 3, 2015 in Gloucester County, New Jersey, as a result of which multiple individuals ("Plaintiffs") sustained bodily injuries.

50.     At the time of the accident, Plaintiffs were riding in a passenger vehicle whose operator drove the vehicle in a way to avoid a tread that had separated from a tire affixed to a truck operated by Silvi Concrete Products Inc. ("Silvi").

51.     On information and belief, the tire in question was originally made by Bridgestone. After the tire's initial manufacture and sale, the Bridgestone tire was retreaded by McCarthy, in its capacity as an authorized Bandag franchise dealer, using the Bandag retread process provided by Bandag to McCarthy.

52.     Following the accident, Plaintiffs initiated the Underlying Actions against Bandag, McCarthy, Silvi, BATO, and the operator of the passenger vehicle, Pamela Reed ("Driver").

53.     In the Underlying Actions, the Plaintiffs alleged, among other things, that McCarthy was negligent and that such negligence caused all or part of Plaintiffs' injuries and resulting damages.

54.     In the Underlying Actions, Plaintiffs also alleged, among other things, that both Bandag and Bridgestone were negligent and that their negligence caused all or part of Plaintiffs' injuries and resulting damages.

15

**D.**     **Bandag's Tender of The Underlying Actions to Federated**

55.     After Plaintiffs initiated the Underlying Actions, Bandag issued a tender to Federated seeking, among other things, a defense and indemnity under the McCarthy Policy in connection with the Underlying Actions.

56.     As part of its tender, Bandag claimed that it was an additional insured under the McCarthy Policy based on McCarthy's agreement in the "2009 Franchise Agreements" to name Bandag as an additional insured on McCarthy's insurance policy.

**E.**     **Federated's Defense Of Bandag In The Underlying Actions—Subject To A Reservation Of Rights**

57.     In response to Bandag's tender, Federated agreed to defend Bandag in the Underlying Actions—subject to a reservation of rights.

58.     Among other things, Federated expressly reserved the right to deny coverage to the extent that Bandag did not qualify as an additional insured under the McCarthy Policy's AI Endorsement.

59.     Federated reserved its rights to disclaim coverage to Bandag for liability for bodily injury that was not caused, in whole or in part, by McCarthy's acts or omissions in the performance of McCarthy's ongoing operations for Bandag.

60.     Federated reserved its rights to disclaim coverage for liability for bodily injury that was caused by Bandag's own acts or omissions.

61.     Federated reserved its rights to disclaim coverage on the basis that McCarthy was not "performing operations" for Bandag.

62.     Federated reserved its rights to disclaim coverage for bodily injury that occurred after that portion of McCarthy's work out of which the injury arose was put to its intended use by others.

16

63.     Further, to the extent Bandag would be entitled to additional insured coverage under the McCarthy Policy, the "2009 Franchise Agreements" only required McCarthy to carry a total of $2,000,000 in additional insured coverage.

64.     Federated thus also reserved its rights to limit additional insured coverage (if any) available to Bandag to, at most, $2,000,000.

65.     Bandag does not dispute that, even if it were an additional insured, Federated would at most owe only $2,000,000 in additional insured coverage to Bandag.

66.     Federated also reserved its rights to limit additional coverage (if any) to Bandag based on the McCarthy Policy's "other insurance" terms.

67.     Upon information and belief, Bandag has other insurance available to it, other than the insurance under the McCarthy Policy.

68.     Federated also reserved all of its rights to assert additional reasons why no coverage is owed to Bandag under the terms, conditions, limitations, endorsements, and exclusions set forth in the McCarthy Policy, for any liability assessed in the Underlying Actions.

**F.      Federated's Denial Of Coverage To BATO**

69.     BATO also tendered its defense and indemnity to Federated under the McCarthy Policy.

70.     Federated denied coverage to BATO because McCarthy had no obligation to provide any additional insured coverage to BATO.

71.     There is no written contract or agreement between BATO and McCarthy pursuant to which McCarthy agreed to add BATO as an additional insured to the McCarthy Policy.

72.     BATO has accepted Federated's coverage determination.

73.     Accordingly, BATO has not been named as a defendant in this coverage action.

17

74.     To the extent that BATO advances a claim in this action or any other action that BATO is an additional insured under the McCarthy Policy, Federated reserves all rights to disclaim coverage for BATO under the McCarthy Policy.

**G.      Bandag and BATO Settled The Claims Asserted Against Them In The Underlying Actions**

75.     In or around August 2018, Bandag and BATO reached a settlement with Plaintiffs in the Underlying Actions.

76.     BATO agrees that Federated is not obligated to indemnify BATO for its portion of the settlement.

77.     Bandag, however, continues to assert that Federated is obligated to indemnify Bandag for Bandag's portion of the settlement (the "Bandag Settlement").

**H.      The Jury Verdict In The Underlying Actions**

78.     After the Bandag Settlement, the Underlying Actions proceeded to trial, as Plaintiffs did not settle with all of the defendants.

79.     At the conclusion of the trial, a jury found that neither McCarthy nor Bandag was liable for any of Plaintiffs' damages; instead, the jury found that Silvi (the owner and operator of the truck containing the retreaded tire) was 85% at fault and the Driver was 15% at fault for Plaintiffs' damages.

80.     A true and correct copy of the jury's verdict sheet is attached hereto as Exhibit "B."

**I.      Federated Denied, And Continues To Deny, Indemnity To Bandag For The Bandag Settlement**

81.     Federated declined to indemnify Bandag for the Bandag Settlement.

82.     Among other reasons, Federated disclaimed indemnity coverage for the Bandag Settlement because Bandag seeks indemnity for damages caused by its own acts or omissions, while the AI Endorsement provides coverage "only with respect to liability for 'bodily injury' . . .

18

caused, in whole or in part, by . . . [McCarthy's] acts or omissions . . . in the performance of [McCarthy's] ongoing operations for [Bandag]."

83.     In fact, Bandag has admitted to Federated in writing that Bandag is only entitled to indemnity under the McCarthy Policy pursuant to the AI Endorsement if McCarthy is found at least partially at fault for Plaintiffs' damages.

84.     There was and has been no such finding.

85.     In the Underlying Actions, the jury did not assign any liability to either McCarthy or BATO/Bandag.

86.     The jury in the Underlying Actions found that neither McCarthy nor BATO/Bandag was liable for any of Plaintiffs' damages.

87.     Thus, Bandag is not entitled to additional insured coverage under the McCarthy Policy.

88.     McCarthy's acts or omissions did not cause, in whole or in part, any of Plaintiffs' damages.

89.     In the Underlying Actions, Bandag even filed a Motion for Partial Summary Judgment arguing, among other things, that it was not, and could not be found, vicariously liable for any of McCarthy's alleged causative acts or omissions (even if McCarthy's acts or omissions caused Plaintiffs' damages, which the jury determined they did not).

90.     Federated also disclaimed indemnity coverage for the Bandag Settlement because evidence adduced in the Underlying Actions demonstrated that McCarthy did not, at any relevant time, perform operations for Bandag.

91.     Further, Federated disclaimed indemnity coverage for the Bandag Settlement because, even if Bandag's liability (of which, according to the jury, Bandag had none) was for

19

bodily injury caused, in whole or in part, by McCarthy's acts or omissions in the performance of McCarthy's ongoing operations for Bandag, there was still no indemnity coverage where that portion of McCarthy's work had been put to its intended use (*i.e.*, retreading the tire that was put on the Silvi truck).

92.    Additionally, to the extent that Bandag paid its settlement on account of Bandag's own acts or omissions causing liability to the Plaintiffs (notwithstanding the jury's later determination that Bandag was not liable), the AI Endorsement in the McCarthy Policy does not provide coverage for Bandag's own negligent acts or omissions.

93.    The AI Endorsement in the McCarthy Policy provides coverage only for Bandag's vicarious liability for McCarthy's causative acts or omissions.

94.    Bandag is not entitled to additional insured coverage for its own negligence.

## COUNT ONE

### DECLARATORY JUDGMENT

### FEDERATED HAS NO DUTY, UNDER THE MCCARTHY POLICY, TO INDEMNIFY BANDAG FOR THE BANDAG SETTLEMENT

95.    Federated incorporates by reference all of the foregoing allegations as though the same were set forth here.

96.    Pursuant to the DECLARATORY JUDGMENTS ACT, 28 U.S.C. § 2201, Federated is entitled to a judicial determination concerning the parties' rights and obligations, if any, under the McCarthy Policy in connection with the Bandag Settlement.

97.    Federated has no duty to indemnify Bandag for the Bandag Settlement.

98.    Bandag does not qualify as an additional insured under the McCarthy Policy's AI Endorsement.

20

99.     The AI Endorsement provides certain limited additional insured coverage (including, where applicable, indemnity) to Bandag if McCarthy and Bandag "agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [McCarthy's] policy."

100.     Federated does not owe indemnity to Bandag to the extent that the "2009 Franchise Agreements" expired before the accident in the Underlying Actions occurred, and there was no writing in a contract or agreement in place at the time of the accident pursuant to which McCarthy agreed to add Bandag as an additional insured to the McCarthy Policy.

101.     Even if the "2009 Franchise Agreements" were not expired at the time of the accident in the Underlying Actions, the AI Endorsement provides certain limited coverage to Bandag "only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by . . . [McCarthy's] acts or omissions . . . in the performance of [McCarthy's] ongoing operations for [Bandag]."

102.     The insurance made available by the AI Endorsement does not apply to, among other things, "'[b]odily injury" . . . occurring after . . . [t]hat portion of '[McCarthy's] work' out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project."

103.     A jury in the Underlying Actions determined that BATO/Bandag has no liability for any of Plaintiffs' damages.

104.     Because the jury determined that Bandag is not liable for any damages, Federated has no duty to indemnify Bandag for the Bandag Settlement.

105.    Even if the jury found that Bandag was liable for all or part of Plaintiffs' damages, which it did not, Federated still is not obligated to indemnify Bandag for the Bandag Settlement.

106.    Federated has no obligation to indemnify Bandag for its own causative acts or omissions.

107.    Bandag was not vicariously liable for any damages caused by McCarthy.

108.    The jury in the Underlying Actions found that McCarthy has no liability whatsoever for Plaintiffs' damages.

109.    Even if Bandag were liable for Plaintiffs' damages, which the jury in the Underlying Actions found that it is not, such liability could not be for "'bodily injury' . . . caused, in whole or in part, by . . . [McCarthy's] acts or omissions . . . in the performance of [McCarthy's] ongoing operations for [Bandag]."

110.    Because Bandag's liability, if any, could not have been caused by McCarthy's acts or omissions in the performance of McCarthy's ongoing operations for Bandag, Federated has no duty to indemnify Bandag for the Bandag Settlement.

111.    Even if the jury in the Underlying Actions found Bandag liable for damages caused by McCarthy's acts or omissions in the performance of McCarthy's ongoing operations for Bandag, which it did not, Federated still has no duty to indemnify Bandag for the Bandag Settlement.

112.    Plaintiffs' bodily injury damages occurred after that portion of McCarthy's work out of which Plaintiffs' damages arose was put to its intended use—damages which are excluded under the McCarthy Policy's AI Endorsement.

113.    For these and other reasons, Federated has no duty under the McCarthy Policy to indemnify Bandag for the Bandag Settlement.

22

114.    Plus, Federated's obligation (if any, which is denied) to indemnify Bandag is impacted by the "other insurance" terms in the McCarthy Policy discussed above and based on Bandag's other available insurance to which such terms apply.

115.    For the same reasons discussed above, Federated also has no duty under the McCarthy Policy's Umbrella Part to indemnify Bandag for the Bandag Settlement.

**WHEREFORE**, Federated respectfully requests that this Court enter an Order:

(a)    Declaring that Federated has no duty to indemnify Bandag for the Bandag Settlement; and

(b)    Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Federated may be entitled and which this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff Federated Service Insurance Company hereby demands a trial by jury of issues so triable.

WHITE AND WILLIAMS LLP

BY:    _____
Anthony L. Miscioscia (PA # 69215)
Timothy A. Carroll (PA # 318907)
1650 Market Street, Suite 1800
Philadelphia, PA 19103-7395
(215) 864 6356/6218
*Attorneys for Plaintiff,*
*Federated Service Insurance Company*

Dated: February 25, 2019

# Exhibit A

Insured Copy

**COMMERCIAL PACKAGE POLICY**

A STOCK COMPANY

FEDERATED SERVICE
INSURANCE COMPANY
HOME OFFICE: OWATONNA
MINNESOTA 55060
PHONE: 507-455-5200

**FEDERATED INSURANCE** ®

Policy No. 9337001
Account No. 350-838-9

NAMED INSURED AND MAILING ADDRESS
**MCCARTHY TIRE SERVICE COMPANY
INC
340 KIDDER ST
WILKES-BARRE PA   18702**

CERTIFIED TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL POLICY
*Becky Lee*

RISK ADDRESS (if different than above):
POLICY PERIOD: from **01-01-2015**   to   **01-01-2016**    12:01 A.M. Standard time at the designated business premises.

BUSINESS OPERATIONS:
OPERATES AS: **Corporation**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THE POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THE POLICY.

THIS POLICY CONSISTS OF ONLY THOSE COVERAGE PARTS SHOWN BELOW. THE PREMIUM MAY BE SUBJECT TO ADJUSTMENT.
 COMMERCIAL PROPERTY COVERAGE PART
 COMMERCIAL INLAND MARINE COVERAGE PART
 COMMERCIAL GENERAL LIABILITY COVERAGE PART
 BUSINESS AUTO COVERAGE PART

NOTICE TO PA AUTOMOBILE POLICYHOLDERS
Pennsylvania statute requires us to provide you with the following notice:
Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.

CERTIFIED ACTS OF TERRORISM PREMIUM:
TOTAL PROVISIONAL PREMIUM:      As Billed

COLLISION DAMAGE TO RENTAL VEHICLES -
REFER TO ENDORSEMENT CA-F-54 FOR A
DESCRIPTION OF COVERAGES AND LIMITATIONS.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL-F-26 (07-95) | IL-F-49 (09-06) | IL 02 46 (09-07) |
| IL 00 17 (11-98) | IL 00 21 (09-08) | IL 09 10 (07-02) |
| IL-F-38 (01-08) | IL 09 35 (07-02) | |
| IL 09 52 (03-08) | IL-F-27 (08-94) | |
| IL 09 96 (01-07) | IL-F-10 (07-95) | |
| CP-F-18 (01-86) | IL 01 20 (10-13) | |
| IL-F-43 (09-06) | IL 01 66 (09-07) | |
| IL-F-45 (09-06) | IL 01 72 (09-07) | |

In Witness Whereof, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

*Jeffrey Fetters*

*Paul Drahos*
SECRETARY

PRESIDENT

Authorized Representative

This Policy consists of: (1) this Declarations; (2) the Declarations and coverage form for each Coverage Part indicated above as being part of this Policy; and (3) all forms and endorsements listed on any of those Declarations.

IL-F-1 (01-86)            **COMMON POLICY DECLARATIONS**            Countersigned Date 01-15-2015

Insured Copy

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COMMERCIAL PACKAGE POLICY ENDORSEMENT

### ADDITIONAL NAMED INSURED ENDORSEMENT

The first Named Insured shown in the Declarations includes the person(s) or organization(s) designated below, subject to the following additional Common Policy Conditions:

1. The first Named Insureds shown in the Declarations is authorized to act for additional named insured(s) in all matters relating to this insurance.

2. If the first Named Insured shown in the Declarations becomes insolvent or bankrupt, the additional named insured(s) agree to pay us any premium for this insurance.

3. This endorsement will not waive any rights of recovery as a claimant which would be valid, if not shown as an additional named insured.

4. Knowledge or discovery by any insured (including any partner or officer) shall be considered knowledge or discovery made by all insureds.

5. The first Named Insured shown in the Declarations declares that all firms named in the policy (named insureds and additional named insureds) are owned or financially controlled by the same interests.

### Names of Additional Named Insureds:

| Entity No. | Name of Insured | Entity Type | F.E.I.N |
|---|---|---|---|
| 1 | MCCARTHY TIRE SERVICE COMPANY INC | Corporation | 24-0780800 |
| 2 | MCCARTHY OTR RETREADING INC | Corporation | 26-0410656 |
| 3 | MCCARTHY TIRE SERVICE CO OF MARYLAND INC | Corporation | 52-2192788 |
| 4 | MCCARTHY TIRE SERVICE CO OF VIRGINIA INC | Corporation | 54-1979794 |
| 5 | MCCARTHY TIRE SERVICE COMPANY OF NEW YORK INC | Corporation | 03-0555167 |
| 6 | MCCARTHY TIRE SERVICE COMPANY OF NORTH CAROLINA INC | Corporation | 27-1135721 |
| 7 | MCCARTHY TIRE SERVICE COMPANY OF PA INC | Corporation | 23-2672004 |
| 7* | MCCARTHY DEVELOPMENT | Corporation | 23-2672004 |
| 7* | MCCARTHY TIRE SERVICE OF ALLENTOWN INC | Corporation | 23-2672004 |

* Additional trade name of the legal entity
Continued on Next Page



FEDERATED SERVICE INSURANCE COMPANY
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

All other terms of this policy remain unchanged.

CP-F-18 (01-86)          Policy Number: 9337001          Transaction Effective Date: 01-01-2015

Insured Copy

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMERCIAL PACKAGE POLICY ENDORSEMENT

### ADDITIONAL NAMED INSURED ENDORSEMENT

The first Named Insured shown in the Declarations includes the person(s) or organization(s) designated below, subject to the following additional Common Policy Conditions:

1. The first Named Insureds shown in the Declarations is authorized to act for additional named insured(s) in all matters relating to this insurance.

2. If the first Named Insured shown in the Declarations becomes insolvent or bankrupt, the additional named insured(s) agree to pay us any premium for this insurance.

3. This endorsement will not waive any rights of recovery as a claimant which would be valid, if not shown as an additional named insured.

4. Knowledge or discovery by any insured (including any partner or officer) shall be considered knowledge or discovery made by all insureds.

5. The first Named Insured shown in the Declarations declares that all firms named in the policy (named insureds and additional named insureds) are owned or financially controlled by the same interests.

### Names of Additional Named Insureds:

| Entity No. | Name of Insured | Entity Type | F.E.I.N |
|---|---|---|---|
| 7* | MCCARTHY TIRE SERVICE OF HARRISBURG INC | Corporation | 23-2672004 |
| 7* | MCCARTHY TIRE SERVICE OF HAZLETON INC | Corporation | 23-2672004 |
| 7* | MCCARTHY TIRE SERVICE OF LANCASTER INC | Corporation | 23-2672004 |
| 7* | MCCARTHY TIRE SERVICE OF READING INC | Corporation | 23-2672004 |
| 7* | MCCARTHY TIRE SERVICE OF SCRANTON INC | Corporation | 23-2672004 |
| 7* | MCCARTHY TIRE SERVICE OF WILLIAMSPORT INC | Corporation | 23-2672004 |
| 8 | MCCARTHY TIRE SERVICE OF DICKSON CITY INC | Corporation | 20-2215991 |
| 9 | MCCARTHY TIRE SERVICE COMPANY OF PHILADELPHIA INC | Corporation | 23-3018477 |

\* Additional trade name of the legal entity



FEDERATED SERVICE INSURANCE COMPANY
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

All other terms of this policy remain unchanged.

CP-F-18 (01-86)          Policy Number: 9337001          Transaction Effective Date: 01-01-2015

Insured Copy

# DECLARATIONS
## COMMERCIAL GENERAL LIABILITY COVERAGE PART

| LIMITS OF INSURANCE | | Limit |
|---|---|---|
| GENERAL AGGREGATE LIMIT (Other than Products-Completed Operations) | | $2,000,000 |
| PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT | | $2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | | $1,000,000 |
| EACH OCCURRENCE LIMIT | | $1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | Any one premises | $100,000 |
| MEDICAL EXPENSE LIMIT | Any one person | $5,000 |

**RETROACTIVE DATE** (Claims Made Coverage Form CG 00 02 only)

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown below.

Retroactive Date: _____

**Refer to General Liability Schedule CG-F-8 for Locations and Classifications.**

**ENDORSEMENTS APPLICABLE:**

*** See Schedule Attached ***

Includes copyrighted material of Insurance Services office, Inc. with its permission.

CG-F-1 (07-98)          Policy Number: 9337001          Effective Date: 01-01-2015

Insured Copy

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Title as on Form or Endorsement | Form Edition |
|---|---|
| General Liability Schedule | CG-F-8 (07-92) |
| Primary And Noncontributory-Other Insurance Condition Endorsement | CG 20 01 (04-13) |
| Additional Insured - Lessor Of Leased Equipment - Automatic Status | CG 20 34 (04-13) |
| Blanket Waiver Of Transfer Of Rights Of Recovery Against Others To Us | CG-F-81 (04-13) |
| Additional Insured - Managers Or Lessors Of Premises | CG 20 11 (04-13) |
| Additional Insured - Mortgagee, Assignee, Or Receiver | CG 20 18 (04-13) |
| Additional Insured - Lessor Of Leased Equipment | CG 20 28 (04-13) |
| Quick Reference | CG 00 01 (QR) (04-13) |
| Commercial General Liability Coverage Form | CG 00 01 (04-13) |
| Communicable Disease Exclusion | CG 21 32 (05-09) |
| Employment-Related Practices Exclusion | CG 21 47 (12-07) |
| Fungi or Bacteria Exclusion | CG 21 67 (12-04) |
| Cap on Losses From Certified Acts Of Terrorism | CG 21 70 (01-08) |
| Exclusion Of Punitive Damages Related To A Certified Act Of Terrorism | CG 21 76 (01-08) |
| Cond Excl - Terrorism Involving Nucl, Bio, or Chem Terrorism | CG 21 88 (05-04) |
| Silica Or Silica-Related Dust Exclusion | CG 21 96 (03-05) |
| Snowplow Operations Coverage | CG 22 92 (12-07) |
| Amendment Of Coverage Territory - Worldwide Coverage | CG 24 22 (04-13) |
| Amendment Of Liquor Liability Exclusion | CG-F-109 (03-12) |
| Additional Condition - Two Or More Coverage Forms Or Policies Issues By Us | CG-F-111 (03-12) |
| Pollution Exclusion Modification | CG-F-53 (02-10) |
| Multi - Cover Liability Endorsement | CG-F-6 (07-11) |
| Coverage Limitation - Continuous or Progressive Injury or Damage | CG-F-68 (10-01) |
| Business Operations - Pollution Exclusion | CG-F-92 (04-05) |
| Not-For-Profit Personal Liability Coverage | CG-F-98.4 (07-05) |
| Employee Benefits Liability Coverage Form | CG 04 35 (12-07) |
| Electronic Data Liability Endorsement | CG 04 37 (05-14) |
| Exclusion - All Hazards In Connection With Designated Premises | CG 21 00 (07-98) |
| Broadened Coverage For Other Organizations | CG-F-107 (07-11) |
| Amendment Of Product And Faulty Repairs Coverage | CG-F-15 (11-96) |
| Property Damage Car Wash Coverage | CG-F-45 (04-95) |
| °Special Endorsement | IL-F-10.2-1 (07-95) |
| °Special Endorsement | IL-F-10.2-2 (07-95) |
| °Special Endorsement | IL-F-10.2-3 (07-95) |
| °Special Endorsement | IL-F-10.2-4 (02-98) |
| °Special Endorsement | IL-F-10.2-5 (02-98) |

Insured Copy

## GENERAL LIABILITY SCHEDULE
## New York

| Locations and Classifications | Code No. | Premium Bases | Rates Prem/Op. | Prod/Comp Op. | Estimated Annual Premiums Prem/Op. | Prod/Comp Op. |
|---|---|---|---|---|---|---|
| | | a - Area | a - Per 1,000 Square Feet | | | |
| | | b - Cost of materials | b - Per $1,000 of Cost | | | |
| | | c - Each or Unit | c - Each Unit | | | |
| | | d - Gallons | d - Per 10,000 Gallons | | | |
| | | e - Locations | e - Each Location | | | |
| | | f - Net Receipts | f - Per $1,000 of Net Receipts | | | |
| | | g - Payroll | g - Per $1,000 of Payroll | | | |
| | | h - Receipts | h - Per $1,000 of Total Receipts | | | |
| | | i - Cost to Insured | i - Per $1,000 of Cost | | | |
| | | j - Days | j - Each day | | | |
| | | k - Gallons | k - Per 1,000 Gallons | | | |
| | | l - Pupils | l - Each pupil | | | |
| | | m - Miles | m - Each mile | | | |
| | | n - Passenger Days | n - Per 1000 Passenger Days | | | |
| | | o - Acres | o - Each acre | | | |
| | | p - Members | p - Each member | | | |
| Auto Service Or Repair | | H- | INC | INC | INC | INC |
| Tire And Auto Accessory Sales - Dealer | | H- | INC | INC | INC | INC |
| Tire - Retreading Or Recapping | | H- | INC | INC | INC | INC |
| Certified Acts of Terrorism Premium | | | | | INC | INC |

Minimum Premiums:
Prem/Op.        INC

Insured Copy

## GENERAL LIABILITY SCHEDULE
### Pennsylvania

| Locations and Classifications | Code No. | Premium Bases | Rates Prem/Op. | Rates Prod/Comp Op. | Estimated Annual Premiums Prem/Op. | Estimated Annual Premiums Prod/Comp Op. |
|---|---|---|---|---|---|---|
| | | a - Area | a - Per 1,000 Square Feet | | | |
| | | b - Cost of materials | b - Per $1,000 of Cost | | | |
| | | c - Each or Unit | c - Each Unit | | | |
| | | d - Gallons | d - Per 10,000 Gallons | | | |
| | | e - Locations | e - Each Location | | | |
| | | f - Net Receipts | f - Per $1,000 of Net Receipts | | | |
| | | g - Payroll | g - Per $1,000 of Payroll | | | |
| | | h - Receipts | h - Per $1,000 of Total Receipts | | | |
| | | i - Cost to Insured | i - Per $1,000 of Cost | | | |
| | | j - Days | j - Each day | | | |
| | | k - Gallons | k - Per 1,000 Gallons | | | |
| | | l - Pupils | l - Each pupil | | | |
| | | m - Miles | m - Each mile | | | |
| | | n - Passenger Days | n - Per 1000 Passenger Days | | | |
| | | o - Acres | o - Each acre | | | |
| | | p - Members | p - Each member | | | |
| Auto Service Or Repair | | H- | INC | INC | INC | INC |
| Car Washes - Self Serve | | C- | INC | | INC | INC |
| Tire And Auto Accessory Sales - Dealer | | H- | INC | INC | INC | INC |
| Tire - Retreading Or Recapping | | H- | INC | INC | INC | INC |
| Vacant Land | | E- | INC | | INC | INC |
| Amendment Of Faulty Repair Coverage-Tire Dealers-75% | | H- | | | INC | INC |
| Certified Acts of Terrorism Premium | | | | | INC | INC |
| Employee Benefits Liability Coverage | | | | | INC | INC |

Minimum Premiums:
Prem/Op.        INC

Insured Copy

COMMERCIAL GENERAL LIABILITY
CG 20 01 04 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PRIMARY AND NONCONTRIBUTORY - OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

(1) The additional insured is a Named Insured under such other insurance; and

(2) You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

© Insurance Services Office, Inc., 2012

CG 20 01 04 13   Policy Number: 9337001   Transaction Effective Date: 01-01-2015

Insured Copy

# QUICK REFERENCE

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## (OCCURRENCE FORM CG 00 01)

### PLEASE READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**
Named Insured and Mailing Address
Policy Period
Description of Business Operations
Coverages and Limits of Insurance

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

| | | Beginning on Page |
|---|---|---|
| SECTION I - COVERAGES | | |
| Coverage A- | Insuring Agreement | 1 |
| Bodily Injury and | | |
| Property Damage Liability | Exclusions | 2 |
| Coverage B- | Insuring Agreement | 6 |
| Personal and Advertising | | |
| Injury Liability | Exclusions | 6 |
| Coverage C- | Insuring Agreement | 8 |
| Medical Payments | Exclusions | 8 |
| Supplementary Payments | | 8 |
| SECTION II - WHO IS AN INSURED | | 9 |
| SECTION III - LIMITS OF INSURANCE | | 10 |
| SECTION IV - LIABILITY CONDITIONS | | |
| Bankruptcy | | 11 |
| Duties In The Event of Occurrence, Claim or Suit | | 11 |
| Legal Action Against Us | | 11 |
| Other Insurance | | 12 |
| Premium Audit | | 12 |
| Representations | | 12 |
| Separation of Insureds | | 13 |
| Transfer of Rights of Recovery Against Others To Us | | 13 |
| When We Do Not Renew | | 13 |
| SECTION V - DEFINITIONS | | 13 |

**COMMON POLICY CONDITIONS**

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CG 00 01 (QR) (04-13)          Policy Number: 9337001          Transaction Effective Date: 01-01-2015

Insured Copy

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

### COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Insured Copy

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in;

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

Policy Number: 9337001                    Transaction Effective Date: 01-01-2015

Insured Copy

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

Insured Copy

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    (b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

© Insurance Services Office, Inc., 2012

Policy Number: 9337001        Transaction Effective Date: 01-01-2015

Insured Copy

    (4) Personal property in the care, custody or control of the insured;

    (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    (1) "Your product";

    (2) "Your work"; or

    (3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

    (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

insured Copy

(4) Any federal state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

   This insurance does not apply to:

   a. **Knowing Violation Of Rights Of Another**

      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   b. **Material Published With Knowledge Of Falsity**

      "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

   c. **Material Published Prior To Policy Period**

      "Personal and advertising injury" arising out of oral or written publication, in any manner of material whose first publication took place before the beginning of the policy period.

   d. **Criminal Acts**

      "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

   e. **Contractual Liability**

      "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

   f. **Breach Of Contract**

      "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

   g. **Quality Or Performance Of Goods - Failure To Conform To Statements**

      "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

   h. **Wrong Description Of Prices**

      "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

Policy Number: 9337001                    Transaction Effective Date: 01-01-2015

Insured Copy

i.  **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j.  **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k.  **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l.  **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m.  **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n.  **Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

o.  **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

p.  **Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13          Policy Number: 9337001          Transaction Effective Date: 01-01-2015

Insured Copy

## COVERAGE C - MEDICAL PAYMENTS

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

         (a) The accident takes place in the "coverage territory" and during the policy period;

         (b) The expenses are incurred and reported to us within one year of the date of the accident; and

         (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

      To any insured, except "volunteer workers".

   b. **Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers' Compensation And Similar Laws**

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. **Athletics Activities**

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   f. **Products-Completed Operations Hazard**

      Included within the "products-completed operations hazard".

   g. **Coverage A Exclusions**

      Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012

Policy Number: 9337001                    Transaction Effective Date: 01-01-2015

Insured Copy

g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.  This insurance applies to such liability assumed by the insured;

c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.  The indemnitee:

(1)  Agrees in writing to:

(a)  Cooperate with us in the investigation, settlement or defense of the "suit";

(b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c)  Notify any other insurer whose coverage is available to the indemnitee; and

(d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2)  Provides us with written authorization to:

(a)  Obtain records and other information related to the "suit"; and

(b)  Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I - Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II - WHO IS AN INSURED**

1.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e.  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

Insured Copy

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company)

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

© Insurance Services Office, Inc., 2012

Policy Number: 9337001          Transaction Effective Date: 01-01-2015

Insured Copy

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal And Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Insured Copy

**4. Other Insurance**

if other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

Policy Number: 9337001

Transaction Effective Date: 01-01-2015

Insured Copy

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

   (1) Goods or products made or sold by you in the territory described in Paragraph a. above;

   (2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

   (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Insured Copy

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

Policy Number: 9337001

Transaction Effective Date: 01-01-2015

Insured Copy

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

    (a) Snow removal;

    (b) Road maintenance, but not construction or resurfacing; or

    (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1) Products that are still in your physical possession; or

        (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in your contract has been completed.

            (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed

    b. Does not include "bodily injury" or "property damage" arising out of:

        (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

        (3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

Insured Copy

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

    a.  Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a) You;

            (b) Others trading under your name; or

            (c) A person or organization whose business or assets you have acquired; and

        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.  Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2) The providing of or failure to provide warnings or instructions.

    c.  Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

    a.  Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b.  Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        (2) The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

Policy Number: 9337001          Transaction Effective Date: 01-01-2015

Insured Copy

FEDERATED INSURANCE COMPANIES

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL CONDITION - TWO OR MORE COVERAGE
## FORMS OR POLICIES ISSUED BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **Section IV - Commercial General Liability Conditions:**

**Two Or More Coverage Forms Or Policies Issued By Us**

If this coverage form and any other coverage form or policy issued to you by us or any company affiliated with us applies to the same "occurrence", the maximum Each Occurrence Limit under all the coverage forms or policies shall not exceed the highest applicable Each Occurrence Limit under any one coverage form or policy. This condition does not apply to any coverage form or policy issued by us or an affiliated company specifically to apply as excess insurance over this coverage form.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Insured Copy

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

SPECIAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that SECTION V - DEFINITIONS, 3 is deleted and replaced by

3. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. This also includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease.

4-974 DAVID S GALLIGANI

 **COMMERCIAL PACKAGE**
**POLICY CHANGE ENDORSEMENT**

**FEDERATED SERVICE INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

Name of Insured:
MCCARTHY TIRE SERVICE COMPANY
INC
340 KIDDER ST
WILKES-BARRE PA   18702

Policy Effective        01-01-2015

## General Liability Revisions

Add Form(s)

  CG 20 33 (04-13) Additional Insured - Owners, Lessees Or Contractors
  - Automatic Status

     No Endorsement Charge

The above changes to your policy have been made.
All other conditions and provisions remain unchanged.

SECRETARY                    PRESIDENT            If you have any questions,
please contact your
Producer.

IL-F-4 (09-99)          Policy Number:  9337001          Transaction Effective Date:  01-01-2015
                        Issue Date:  02-02-2015

COMMERCIAL GENERAL LIABILITY
CG 20 33 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

**2.** "Bodily injury" or "property damage" occurring after:

  **a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

  **b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

  **1.** Required by the contract or agreement you have entered into with the additional insured; or

  **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

Policy Number: 9337001                    Transaction Effective Date: 01-01-2015

Insured Copy

A STOCK COMPANY

**Commercial Umbrella Liability Policy**

**FEDERATED**
*INSURANCE*®

FEDERATED SERVICE
INSURANCE COMPANY
HOME OFFICE: OWATONNA
MINNESOTA 55060
Phone No.    (507) 455-5200

Policy No. 9337006

Account No. 350-838-9

**DECLARATIONS**

Item 1. Named Insured and Address:
MCCARTHY TIRE SERVICE COMPANY
INC
340 KIDDER ST
WILKES-BARRE PA   18702

CERTIFIED TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL POLICY
*Becky Lee.*

Item 2. Policy Period:  (Mo. Day Yr.)
From  01-01-2015    to 01-01-2016
         12:01 A.M., standard time at the address of the named insured as stated herein.
The named insured is:
         Corporation
Business of named insured is:

Item 3.  $20,000,000   Occurrence Limit
Item 4.  $20,000,000   Aggregate Limit
Item 5.   As Billed   Annual Premium

Item 6.    Schedule of Underlying Insurance Policies.

**CERTIFIED ACTS OF
TERRORISM PREMIUM:**

| Type of Insurance | Limits of Liability | | Insurer - Federated unless otherwise indicated. |
|---|---|---|---|
| | Per Occurrence | Aggregate | |
| **GENERAL LIABILITY** | | | |
| [X] Commercial General Liability | $1,000,000 | $2,000,000 | |
| [ ] Businessowners | | | |
| [ ] Dwelling | | | |
| [ ] Dwelling | | | |
| [ ] Dwelling | | | |
| **AUTO LIABILITY** | | | |
| [X] Business Auto | $1,000,000 | | |
| [ ] Auto Dealers Coverage Form | | | |
| [ ] Businessowners | | | |
| [ ] Personal Auto | | | |
| **OTHER UNDERLYING INSURANCE** | | | |
| [ ] Equipment Dealers Stock Floater, Coverage B - Property of Others | | | |
| [X] Garagekeepers | | | |
| [X] Legal Liability - Building | | | |
| **EMPLOYERS LIABILITY** | Limits of Liability | | |
| [X] Employers Liability | $1000/1000/1000 | | |
| [ ] State Fund | | | |
| [ ] Self-insured Work Comp | | | |

Endorsement(s) attached hereto:   See Schedule of Forms and Endorsements Attached

_____
Date                    Authorized Representative

CU-F-1 (10-13)

Transaction Effective Date: 01-01-2015

Insured Copy

FEDERATED INSURANCE COMPANIES

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COMMERCIAL UMBRELLA LIABILITY POLICY

ADDITIONAL NAMED INSUREDS ENDORSEMENT

The Named Insured shown in the Declarations includes the person(s) or organization(s) designated below, subject to the following additional policy conditions:

1. The Named Insured shown in the Declarations is authorized to act for additional named insured(s) in all matters relating to this insurance.

2. If the Named Insured shown in the Declarations becomes insolvent or bankrupt, the additional named insured(s) agree to pay us any premium for this insurance.

3. This endorsement will not waive any rights of recovery as a claimant which would be valid, if not shown as an additional named insured.

4. Knowledge or discovery by any insured (including any partner or officer) shall be considered knowledge or discovery made by all insureds.

5. The Named Insured shown in the Declarations declares that all firms named in the policy (named insureds and additional named insureds) are owned or financially controlled by the same interests.

Names of Additional Named Insureds:

| Entity No. | Name of Insured | Entity Type | F.E.I.N |
|---|---|---|---|
| 1 | MCCARTHY TIRE SERVICE COMPANY INC | Corporation | 24-0780800 |
| 2 | MCCARTHY OTR RETREADING INC | Corporation | 26-0410656 |
| 3 | MCCARTHY TIRE SERVICE CO OF MARYLAND INC | Corporation | 52-2192788 |
| 4 | MCCARTHY TIRE SERVICE CO OF VIRGINIA INC | Corporation | 54-1979794 |
| 5 | MCCARTHY TIRE SERVICE COMPANY OF NEW YORK INC | Corporation | 03-0555167 |
| 6 | MCCARTHY TIRE SERVICE COMPANY OF NORTH CAROLINA INC | Corporation | 27-1135721 |
| 7 | MCCARTHY TIRE SERVICE COMPANY OF PA INC | Corporation | 23-2672004 |
| 7* | MCCARTHY DEVELOPMENT | Corporation | 23-2672004 |
| 7* | MCCARTHY TIRE SERVICE OF ALLENTOWN INC | Corporation | 23-2672004 |
| 7* | MCCARTHY TIRE SERVICE OF HARRISBURG INC | Corporation | 23-2672004 |
| 7* | MCCARTHY TIRE SERVICE OF HAZLETON INC | Corporation | 23-2672004 |

* Additional trade name of the legal entity

Continued on Next Page

CU-F-3 (10-08)          Policy Number: 9337006          Transaction Effective Date: 01-01-2015

Insured Copy

FEDERATED INSURANCE COMPANIES

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COMMERCIAL UMBRELLA LIABILITY POLICY

ADDITIONAL NAMED INSUREDS ENDORSEMENT

The Named Insured shown in the Declarations includes the person(s) or organization(s) designated below, subject to the following additional policy conditions:

1. The Named Insured shown in the Declarations is authorized to act for additional named insured(s) in all matters relating to this insurance.

2. If the Named Insured shown in the Declarations becomes insolvent or bankrupt, the additional named insured(s) agree to pay us any premium for this insurance.

3. This endorsement will not waive any rights of recovery as a claimant which would be valid, if not shown as an additional named insured.

4. Knowledge or discovery by any insured (including any partner or officer) shall be considered knowledge or discovery made by all insureds.

5. The Named Insured shown in the Declarations declares that all firms named in the policy (named insureds and additional named insureds) are owned or financially controlled by the same interests.

Names of Additional Named Insureds:

| Entity No. | Name of Insured | Entity Type | F.E.I.N |
|---|---|---|---|
| 7* | MCCARTHY TIRE SERVICE OF LANCASTER INC | Corporation | 23-2672004 |
| 7* | MCCARTHY TIRE SERVICE OF READING INC | Corporation | 23-2672004 |
| 7* | MCCARTHY TIRE SERVICE OF SCRANTON INC | Corporation | 23-2672004 |
| 7* | MCCARTHY TIRE SERVICE OF WILLIAMSPORT INC | Corporation | 23-2672004 |
| 8 | MCCARTHY TIRE SERVICE OF DICKSON CITY INC | Corporation | 20-2215991 |
| 9 | MCCARTHY TIRE SERVICE COMPANY OF PHILADELPHIA INC | Corporation | 23-3018477 |

* Additional trade name of the legal entity

Insured Copy

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Title as on Form or Endorsement | Form Edition |
| --- | --- |
| Additional Named Insureds Endorsement | CU-F-3 (10-08) |
| Terrorism Risk Insurance Act Policyholder Disclosure Notice | IL-F-38 (01-08) |
| Waiver Of Subrogation | CU-F-112 (10-08) |
| Table of Contents | CU-F-2 (TOC) (10-08) |
| Commercial Umbrella Coverage Form | CU-F-2 (10-08) |
| *Special Endorsement | CU-F-5 (10-08) |
| Personal Use of Company Owned Auto or Watercraft - Designated Individuals | CU-F-109 (12-11) |
| Fungi or Bacteria Exclusion | CU-F-64 (07-09) |
| Exclusion Of Punitive Damages Related To A Certified Act Of Terrorism | CU-F-91 (10-08) |
| Cap on Losses From Certified Acts Of Terrorism | CU-F-92 (10-08) |
| Cond Excl - Terrorism Involving Nucl, Bio, or Chem Terrorism | CU-F-93 (10-08) |
| Pennsylvania Changes - Cancellation or Nonrenewal | CU-F-10 (PA) (10-08) |
| Non-employment Related Discrimination or Harassment Coverage | CU-F-120 (07-13) |

Insured Copy

## COMMERCIAL UMBRELLA LIABILITY POLICY
## TABLE OF CONTENTS

**DECLARATIONS**

Named Insured and Address
Policy Period
Occurrence Limit
Aggregate Limit
Annual Premium
Schedule of Underlying Insurance Policies
Endorsements

**POLICY SECTIONS**

| | | | |
|---|---|---|---|
| I. | COVERAGES | | |
| | A. | Excess Liability Coverages | 1 |
| | B. | Additional Liability Coverages | 1 |
| II. | DEFENSE | | 2 |
| III. | EXCLUSIONS | | |
| | A. | Excess Liability Coverages | 2 |
| | B. | Additional Liability Coverages | 2 |
| IV. | WHO IS AN INSURED | | 5 |
| V. | LIMITS OF INSURANCE | | 6 |
| VI. | DEFINITIONS | | 6 |
| VII. | CONDITIONS | | 7 |
| | NUCLEAR ENERGY LIABILITY EXCLUSION | | 10 |

PLEASE READ YOUR POLICY CAREFULLY

FEDERATED SERVICE
INSURANCE COMPANY
HOME OFFICE: OWATONNA
MINNESOTA 55060

**FEDERATED INSURANCE** ®

Insured Copy

## COMMERCIAL UMBRELLA LIABILITY POLICY

### THIS POLICY IS NON-ASSESSABLE



FEDERATED SERVICE
INSURANCE COMPANY
HOME OFFICE: OWATONNA
MINNESOTA 55060

**This policy is valid only when a Commercial Umbrella Liability Declarations is attached.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you", "your" and "yours" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured in **SECTION IV. WHO IS AN INSURED.** The words "we", "us" and "our" mean the Company providing this insurance.

The word "insured" means any person or organization qualifying as an insured under **SECTION IV. WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION VI. DEFINITIONS.**

### SECTION I. COVERAGES

**A. EXCESS LIABILITY COVERAGES**

We will pay on behalf of the insured those sums the insured becomes legally obligated to pay as damages that are in excess of the applicable limits of "underlying insurance" because of "bodily injury", "property damage" or "personal and advertising injury":

1. that occurs during the policy period shown on the Commercial Umbrella Liability Declarations; and

2. that is covered by "underlying insurance".

In the event of reduction or exhaustion of the aggregate limits of liability under "underlying insurance" by reason of losses paid thereunder, this policy will, subject to the terms and conditions of the "underlying insurance":

a. in the event of reduction, continue in force as excess of the reduced "underlying insurance"; and

b. in the event of exhaustion, continue in force as "underlying insurance".

If the limit of insurance available to the insured under the applicable "underlying insurance" is greater than the amount stated in the Declarations, this policy will apply as excess of the greater amount.

**B. ADDITIONAL LIABILITY COVERAGES**

Except as excluded under SECTION III., we will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages:

1. because of an "allegation" of discrimination or harassment. The discrimination or harassment must have occurred during the policy period shown on the Commercial Umbrella Liability Policy Declarations and not be:

a. intentionally committed by you, or by any partner or executive officer, or at your or their direction; or

b. directly or indirectly related to the employment, prospective employment, or leasing of any person or persons to perform work for any insured.

2. from an "occurrence" during the policy period shown on the Commercial Umbrella Liability Policy Declarations arising from "bodily injury" or "property damage" from the use, loading or unloading of an "aircraft" if such "aircraft" is:

a. not owned or operated by or rented or loaned to any insured; or

b. chartered with a crew by or on behalf of any insured and not owned by any insured.

However, any "aircraft" being operated by any person in the course of employment by any insured or owned by such person is not covered.

CU-F-2 (10-08)          Policy Number: 9337006          Transaction Effective Date: 01-01-2015

Insured Copy

## SECTION II. DEFENSE

A. With respect to the insurance afforded by this policy, if no insurer of an "underlying insurance" policy is obligated to do so, we will have the right and duty to defend any suit against the insured seeking damages because of "bodily injury", "property damage" or "personal and advertising injury" even if any of the allegations of the suit are groundless, false or fraudulent. We may make any investigation and settlement of any claim or suit we deem expedient. We will not, however, be obligated to defend any suit or respond to any claim for damages after the applicable limit of this insurance has been exhausted.

B. With respect to any claim or suit we defend, we will pay the following to the extent that they are not covered by "underlying insurance":

1. All expenses we incur.

2. All costs taxed against the insured in the suit.

3. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request, including actual loss of earnings up to $250 a day because of time off from work.

5. Pre-judgment interest awarded against the insured on that part of the judgment we pay under this policy. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment under this policy that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the Limit of Insurance.

C. In any country where we may be prevented by law or otherwise from carrying out this agreement, we will pay any expense incurred with our written consent in accordance with this agreement.

## SECTION III. EXCLUSIONS

A. With respect to **A. EXCESS LIABILITY COVERAGES,** in addition to all exclusions contained within the applicable "underlying insurance" the following exclusions also apply and this insurance does not apply to:

1. Punitive damages awarded against an insured unless insurable by applicable law and covered by "underlying insurance".

2. Any claim or obligation under any uninsured motorists or underinsured motorists laws, unless this policy is endorsed to provide such insurance.

3. Any claim or obligation under any automobile no fault or first party personal injury laws.

4. Any claim or obligation under the Employer's Retirement Income Security Act of 1974 as now or hereafter amended.

5. Any coverage extensions that have separate limits stated in the "underlying insurance" policies. However, this excess coverage does apply to legal liability coverage provided by:

   a. Legal Liability - Building, or

   b. Garagekeepers, or

   c. Equipment Dealers Stock Floater, Coverage B - Property of Others,

   when you select a limit for that coverage and that coverage is scheduled as "underlying insurance". Coverage is not afforded for any coverage extensions or sublimits within **a., b.,** or **c.** above.

B. With respect to **B. ADDITIONAL LIABILITY COVERAGES,** this insurance does not apply to:

1. **FINES OR PENALTIES** - civil or criminal fines or penalties, non-monetary relief or matters which may be deemed uninsurable according to the applicable law.

2. **INTENTIONAL ACTS** - "bodily injury", "property damage", or "personal and advertising injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "personal and advertising injury" resulting from the use of reasonable force to protect persons or property.

3. **LAWS** - liability imposed on the insured under any of the following laws:

   a. any workers compensation, unemployment compensation, disability benefits, or similar law;

   b. Employer's Retirement Income Security Act of 1974 as now or hereafter amended.

   Part **a.** of this exclusion does not apply to liability of others you assume under a contract.

4. **NUCLEAR ENERGY** - nuclear energy liability excluded by the Nuclear Energy Liability Exclusion printed elsewhere in this policy or an attachment thereto.

CU-F-2 (10-08)          Policy Number: 9337006          Transaction Effective Date: 01-01-2015

Insured Copy

5. **DAMAGE TO PROPERTY**
   "Property damage" to:

   a. Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

   b. Property loaned to you;

   c. Personal property in the care, custody or control of the insured;

   Paragraphs **a.**, **b.**, and **c.** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.

   Paragraphs **b.** and **c.** of this exclusion do not apply to liability assumed under a sidetrack agreement.

6. **WAR** - "Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

   a. War, including undeclared or civil war; or

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. **LEAD AND ASBESTOS** - any injury, damage, loss, cost, payment or expense, including but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of asbestos or lead, asbestos or lead compounds or asbestos or lead which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

   a. Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

   b. Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such injury or damage, loss, cost, payment or expense; or

   c. Any request, order or requirement to abate, mitigate, remediate, contain, remove or dispose of asbestos or lead, asbestos or lead compounds or materials or substances containing asbestos or lead.

8. **PUNITIVE DAMAGES** - punitive damages awarded against an insured unless insurable by applicable law.

9. **POLLUTANTS** -

   a. "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (1) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      (a) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

      (b) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      (c) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire;

   (2) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

CU-F-2 (10-08)          Policy Number: 9337006          Transaction Effective Date: 01-01-2015

Insured Copy

(a) Any insured; or

(b) Any person or organization for whom you may be legally responsible; or

(4) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(a) "Bodily injury" or "properly damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.

This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids, are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(b) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(c) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

(5) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

The term premises as used herein includes any tanks, piping, pumps or dispensers which are or were at any time owned, leased or installed by any insured, wherever located except at residences primarily used for dwelling purposes.

b. Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or suit by or on behalf of a governmental authority.

Subparagraph a.(1) and (4) of this exclusion do not apply to "bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire. As used herein, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location.

10. PHYSICAL MODIFICATIONS

Liability costs or expenses incurred by any insured to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person.

Insured Copy

## SECTION IV. WHO IS AN INSURED

A. With respect to **A. EXCESS LIABILITY COVERAGES,** refer to the applicable "underlying insurance" to determine who is an insured. However:

1. with respect to the ownership, maintenance, use, loading or unloading of an auto, self-propelled machine or watercraft, the following are not insureds even if covered by the "underlying insurance":

   a. Any employee of yours not acting within the scope of their employment or any other person using an auto, self-propelled machine or watercraft which you entrusted to that employee.

   b. Any customer of yours, or any other person using an auto, self-propelled machine or watercraft which you entrusted to a customer.

2. Additional insureds on the "underlying insurance" are not additional insureds on the Commercial Umbrella Policy. However, if:

   a. the Named Insured is required by the terms of a written contract to name a person or organization as an additional insured; and

   b. that written contract was executed prior to the commencement of the activity called for in the contract; then

   the person or organization specified in the written contract is an additional insured on the Commercial Umbrella Policy subject to the terms and conditions of the additional insured endorsement on the "underlying insurance".

B. Each of the following is an insured under **B. ADDITIONAL LIABILITY COVERAGES** to the extent set forth below:

1. You, the Named Insured shown in the Declarations.

2. If you are a corporation, the following are also considered to be Named Insureds:

   a. any subsidiary company acquired or formed during the policy period; and

   b. any other entity controlled and actively managed by you or your subsidiary if the control and active management was acquired during the policy period, but only if:

      (1) this policy is endorsed to add such subsidiary or other entity within ninety (90) days of its formation or acquisition by you, and

      (2) such subsidiary or other entity is not insured under any other liability or indemnity policy.

3. Your executive officers and directors, but only with respect to their duties as your officers and directors.

4. Your stockholders, but only with respect to their liability as your stockholders.

5. Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

6. If you are an individual, you are an insured but only for the conduct of a business of which you are the sole proprietor, and your spouse is an insured for the conduct of such a business.

7. If you are a partnership or joint venture:

   a. the partnership or joint venture so named;

   b. any partner or member thereof, but only with respect to their liability as a partner or member; and

   c. the spouse of any partner, but only with respect to liability as a spouse of a partner.

8. If you are designated in the Declarations as a limited liability company, you are an insured. Your members are also insureds, but only with respect to their liability as members. Your managers are insureds, but only with respect to their duties as your managers.

Except with respect to our Limit of Insurance, the insurance afforded applies separately to each insured against whom claim is made or suit is brought.

Insured Copy

## SECTION V. LIMITS OF INSURANCE

A. The Occurrence Limit stated in the Declarations is the most we will pay for each "accident", "allegation", or "occurrence" regardless of the number of:

1. insureds;
2. claims made or suits brought;
3. persons or organizations making claims or bringing suit; or
4. "underlying insurance" policies or types of applicable underlying coverage.

However, with regards to a person or organization qualifying as an additional insured under this policy, whether endorsed as such or not, the most we will pay on behalf of the additional insured is the lesser of the following:

1. the Occurrence Limit stated in the Declarations, or
2. the amount by which the minimum amount of coverage specifically stated in a written contract exceeds the limit of the "underlying insurance".

B. There is no limit to the number of "accidents", "allegations", or "occurrences" during the policy period for which claims may be made, except that we will not pay more than the Aggregate Limit stated in the Declarations for all claims during the policy period which arise out of:

1. the products-completed operations hazard as defined within the applicable "underlying insurance";
2. work you performed as defined within the applicable "underlying insurance";
3. products as defined within the applicable "underlying insurance"; or
4. "bodily injury" by disease sustained by your employees arising out of and in the course of their employment by you.

The aggregate limit of our liability applies separately to 4. above.

## SECTION VI. DEFINITIONS

The following definitions apply to this policy:

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
2. Regarding web-sites, only that part of a website that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement.

C. "Aircraft" means any heavier than air or lighter than air vehicle designed to transport persons or property through the air.

D. "Allegation" means:

1. the lodging of a written complaint or charge:
   a. with you or one of your employees; or
   b. with any government agency; or
2. your receipt of a summons for the commencement of a civil action.

E. "Bodily Injury":

1. With regards to SECTION I. COVERAGES, A. EXCESS LIABILITY COVERAGES, refer to the definition contained within the applicable "underlying insurance".
2. With regards to SECTION I. COVERAGES, B. ADDITIONAL LIABILITY COVERAGES, the following definition applies:

   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

F. "Occurrence" means an "accident", including continuous or repeated exposure to substantially the same general harmful conditions.

G. "Personal and Advertising Injury":

1. With regards to SECTION I. COVERAGES, A. EXCESS LIABILITY COVERAGES, refer to the definition contained within the applicable "underlying insurance".
2. With regards to SECTION I. COVERAGES, B. ADDITIONAL LIABILITY COVERAGES, the following definition applies:

   "Personal and Advertising Injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   1. False arrest, detention or imprisonment;
   2. Malicious prosecution;

Insured Copy

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

6. The use of another's advertising idea in your "advertisement"; or

7. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

H. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

I. "Property Damage":

1. With regards to **SECTION I. COVERAGES, A. EXCESS LIABILITY COVERAGES**, refer to the definition contained within the applicable "underlying insurance".

2. With regards to **SECTION I. COVERAGES, B. ADDITIONAL LIABILITY COVERAGES**, the following definition applies:

"Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purpose of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

J. "Underlying insurance" means policies of insurance listed in the Schedule of Underlying Insurance Policies in the Declarations.

### SECTION VII. CONDITIONS

A. **Appeals**

If the insured or any insurer who provides the applicable "underlying insurance" elects not to appeal a judgment which exceeds the "underlying insurance" limit, we may elect to do so at our own expense. We will be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall this provision increase our liability beyond our applicable Limit of Insurance.

B. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of any obligations under this policy.

C. **Cancellation or Nonrenewal**

1. The first Named Insured shown in the Declarations may cancel this policy by surrender thereof to us or to any of our authorized agents or by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to the first Named Insured written notice of cancellation at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason permitted by the laws or regulations applicable in your state.

3. We will mail our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If we decide not to renew this policy, we will mail to you written notice of nonrenewal at least 30 days before the expiration date.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

Insured Copy

**D. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**E. Conformity With The Law**

The terms of this policy which are in conflict with the law of the state wherein this policy is issued are hereby amended to conform to such law.

**F. Duties In The Event Of Occurrence, Claim Or Suit**

1. You must see to it that we are notified promptly of an "accident", "allegation" or "occurrence" which may result in a claim. Notice should include:

   a. how, when and where the "accident", "allegation" or "occurrence" took place; and

   b. the names and addresses of any injured persons and witnesses.

   Notice of an "accident", "allegation" or "occurrence" is not notice of a claim.

2. If a claim is made or suit is brought against any insured, you must see to it that we receive prompt written notice of the claim or suit.

3. You and any other involved insured must:

   a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

   b. authorize us to obtain records and other information;

   c. cooperate with us in the investigation, settlement or defense of the claim or suit; and

   d. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may apply.

4. You or anyone else representing your business will not, except at your own cost, voluntarily make a payment, assume any obligation, enter into any settlement agreement, or incur any expense, other than for first aid, without our consent.

**G. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**H. Legal Action Against Us**

No person or organization has a right under this policy:

1. To join us as a party or otherwise bring us into a suit asking for damages from an insured; or

2. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**I. Maintenance Of Underlying Insurance**

1. While this policy is in effect, you will maintain in force the "underlying insurance" as collectible insurance, except for reduction of aggregate limits solely as the result of payment of claims during the policy period.

2. If you neglect to maintain the "underlying insurance" as required, this policy will be construed as though such "underlying insurance" was in force and collectible at the time of the "accident" or "occurrence".

3. If the "underlying insurance" becomes uncollectible due to the insolvency of the insurer of "underlying insurance", this policy will be construed as though such "underlying insurance" was in force and collectible at the time of the "accident" or "occurrence".

**J. Other Insurance**

The coverage provided under this policy is excess over any other insurance or self insurance which covers any part of the injury or damage except insurance written specifically as excess coverage over the limits of this policy.

**K. Premiums**

The first Named Insured shown in the Declarations:

1. is responsible for the payment of all premiums; and

2. will be the payee for any return premiums we pay.

**L. Representations**

By accepting this policy, you agree:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us;

   c. We have issued this policy in reliance upon your representations; and

   d. This policy embodies all agreements existing between you and us or any of our agents relating to this insurance.

CU-F-2 (10-08)          Policy Number: 9337006          Transaction Effective Date: 01-01-2015

Insured Copy

M. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

N. **Transfer Of Your Right And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

O. **Two Or More Umbrella Policies Issued By Us**

If this policy and any other umbrella policy issued by us or any company affiliated with us:

1. applies to the same "accident", "allegation" or "occurrence"; and

2. affords coverage from two or more umbrella policies to any insured or combination of insureds,

the aggregate maximum Limit of Insurance under all umbrella policies shall not exceed the highest applicable Limit of Insurance under any one umbrella policy.

**In Witness Whereof**, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

**SECRETARY**                                        **PRESIDENT**

Page 9 of 10

Insured Copy

NUCLEAR ENERGY LIABILITY EXCLUSION

(BROAD FORM)

(This is the exclusion referred to in SECTION III. EXCLUSION E. - NUCLEAR ENERGY)

1. This policy does not apply:

   a. Under any Liability Coverage, to "bodily injury" or "property damage"

      (1) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) resulting from the "hazardous properties" or "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   b. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   c. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if

      (1) the "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

      (2) the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

      (3) the "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "hazardous properties" include radioactive, toxic or explosive properties.

   "nuclear material" means "source material", "special nuclear material" or "by-product material".

   "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

   "waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

   "nuclear facility" means

   a. any "nuclear reactor"

   b. any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging waste

   c. any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

   d. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operation.

   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

   "property damage" includes all forms of radioactive contamination of property.

CU-F-2 (10-08)                Policy Number: 9337006                Transaction Effective Date: 01-01-2015

# Exhibit B

Court of Common Pleas of Philadelphia County
Trial Division - Civil
TRIAL WORK SHEET

| Judge's Name: LISA M RAU | Judge's I.D.: J444 | Signature: *[signature]* |
|---|---|---|

Report Generated 02-OCT-18 Job #44192

| Caption: BROWN&SMALLEY,AS GUARD.AD LITEM FOR MINOR,A.B,PLF | Case Type: MOTOR VEHICLE ACCIDENT | Program: MAJOR JURY-COMPLEX |
|---|---|---|

| Court Term and Number: #1510-00925 | If Consolidated, Court Term and Number: #1611-01727    #1703-02288 |
|---|---|

| Trial Date: 08-AUG-2018 | [X] Jury  [ ] Non-Jury | Total Amount: | Number of Days: 34 | Disposition Date: 02-OCT-2018 | Date Sheet Prepared: 02-OCT-2018 |
|---|---|---|---|---|---|

Full Description of Disposition (to be entered Verbatim on the Docket)

CASE SETTLED AMONG ALL PARTIES. CASE SETTLED AMONG BRIDGESTONE DEFENDANTS AND ALL PLAINTIFFS PRIOR TO TRIAL. CASE SETTLED AMONG MCCARTHY DEFENDANTS AND ALL PLAINTIFFS DURING TRIAL. CASE SETTLED AMONG SILVI DEFENDANTS AND PLAINTIFFS A.B., MINOR AND KAREN THOMAS DURING TRIAL. CASE SETTLED AMONG SILVI DEFENDANTS AND PLAINTIFFS SHANIKA BROWN AND PAMELA REED AFTER COMPENSATORY DAMAGES VERDICT AND PRIOR TO PUNITIVE DAMAGES PHASE.

| | | |
|---|---|---|
| [ ] Default Judgment/Court Ordered | [ ] Jury Verdict for Plaintiff | [ ] Other (explain) |
| [ ] Directed Verdict | [ ] Jury Verdict for Defendant | |
| [ ] Discontinuance Ordered | [ ] Mistrial | |
| [ ] Transferred to binding arbitration | [ ] Hung Jury | |
| | [ ] Non-Pros entered | |
| [ ] Finding for Defendant (Non-Jury) | [ ] Non-Suit entered | |
| [ ] Finding for Plaintiff (Non-Jury) | [ ] Settled prior to assignment for trial (Team Leaders, only) | Brown&Smalley,As Guard Ad Litem For Minor,A.-WSATJ |
| [ ] Damages Assessed | | |
| [ ] Judgment entered by agreement | [X] Settled after assignment for trial | |
| [ ] Judgment entered | | |
| [ ] Judgment satisfied | [ ] prior to jury selection | |
| | [X] after jury sworn | 15100092550160 |

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b) G. SANDERSON  10/03/2018

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| SHANIKA LAKIYAH BROWN, | : | |
| Plaintiff, | : | OCTOBER TERM, 2015, NO. 0925 |
| v. | : | CASE ID:  151000925 |
| SILVI CONCRETE PRODUCTS, INC., *et al.,* | : | |
| Defendants. | : | **CONSOLIDATED** |
| | : | *Lead Case* |
| PAMELA REED, | : | |
| Plaintiff, | : | MARCH TERM, 2017, NO. 02288 |
| v. | : | CASE ID: 170302288 |
| SILVI CONCRETE PRODUCTS, INC., *et al.,* | : | |
| Defendants. | : | *Consolidated with 151000925* |

## VERDICT FORM

We, the jury, having been regularly impaneled and duly sworn, and having considered the evidence presented at trial, deliver the following verdict:

**Question 1:**

Do you find that Silvi Concrete was negligent?

Yes _✓_   No _____

If you answered "Yes" to Question 1, proceed to Question 2.

If you answered "No" to Question 1, Shanika Brown and Pamela Reed cannot recover. The foreperson should sign this Verdict Form and notify the Law Clerk that a verdict has been reached.  Do not answer any other questions.

**Question 2:**

Do you find that the negligent conduct of Silvi Concrete was a factual cause of any injuries to Shanika Brown and/or Pamela Reed?

Shanika Brown     Yes _✓_  No _____

Pamela Reed       Yes _✓_  No _____

If you answered "No" to Question 2 for both Shanika Brown and Pamela Reed, they cannot recover.  The foreperson should sign this Verdict Form and notify the Law Clerk that a verdict has been reached.  Do not answer any other questions.  Otherwise, proceed to Question 3.

1

**Question 3:**

Do you find that Silvi Concrete's conduct was outrageous?

     Yes ___✓___     No _____

If you answered "Yes" to Question 3, proceed to Question 4.  If you answered "No" to Question 3, do not answer Question 4 and proceed to Question 5.

**Question 4:**

Do you find that the outrageous conduct of Silvi Concrete was a factual cause of any injuries to Shanika Brown and/or Pamela Reed?

Only answer this question for those parties for whom you answered "Yes" in Question 2.

     Shanika Brown     Yes ___✓___ No _____

     Pamela Reed     Yes ___✓___ No _____

Proceed to Question 5.

**Question 5:**

Do you find that Pamela Reed was negligent?

     Yes ___✓___     No _____

If you answered "Yes" to Question 5, proceed to Question 6.  If you answered "No" to Question 5, do not answer Question 6 and proceed to Question 7.

**Question 6:**

Do you find that the negligent conduct of Pamela Reed was a factual cause of any injuries to Shanika Brown and/or Pamela Reed?

Only answer this question for those parties for whom you answered "Yes" in Question 2.

     Shanika Brown     Yes ___✓___ No _____

     Pamela Reed     Yes ___✓___ No _____

Proceed to Question 7.

2

Question 7:

Do you find that the tire manufactured by Bridgestone Americas Tire Operations, LLC contained a manufacturing defect?

Yes _____          No __✓____

If you answered "Yes" to Question 7, proceed to Question 8.  If you answered "No" to Question 7, do not answer Question 8 and proceed to Question 9.

Question 8:

Do you find that the manufacturing defect in the tire manufactured by Bridgestone Americas Tire Operations, LLC was a proximate cause of any injuries to Shanika Brown and/or Pamela Reed?

Only answer this question for those parties for whom you answered "Yes" in Question 2.

Shanika Brown      Yes _____   No _____

Pamela Reed        Yes _____   No _____

Proceed to Question 9.

Question 9:

Do you find that the retreaded tire manufactured by McCarthy Tire Service, Co., Inc. contained a manufacturing defect?

Yes _____          No __✓____

If you answered "Yes" to Question 9, proceed to Question 10.  If you answered "No" to Question 9, do not answer Question 10 and proceed to Question 11.

Question 10:

Do you find that the manufacturing defect in the retreaded tire manufactured by McCarthy Tire Service, Co., Inc. was a proximate cause of any injuries to Shanika Brown and/or Pamela Reed?

Only answer this question for those parties for whom you answered "Yes" in Question 2.

Shanika Brown      Yes _____   No _____

Pamela Reed        Yes _____   No _____

Proceed to Question 11.

3

**Question 11:**

For each party whose conduct you found caused any injuries to Shanika Brown and/or Pamela Reed, state what percentage of that cause you attribute to each party.

Assign a percentage to Silvi Concrete <u>only if</u> you answered "Yes" to Questions 1 and 2 and/or Questions 3 and 4.

Assign a percentage to Bridgestone Americas Tire Operations, LLC <u>only if</u> you answered "Yes" to Questions 7 and 8.

Assign a percentage to McCarthy Tire Service, Co., Inc. <u>only if</u> you answered "Yes" to Questions 9 and 10.

Assign a percentage to Pamela Reed <u>only if</u> you answered "Yes" to Questions 5 and 6.

The percentages must total 100%.

| | |
|---|---|
| Silvi Concrete | 85 % |
| Bridgestone Americas Tire Operations, LLC | 0 % |
| McCarthy Tire Service, Co., Inc. | 0 % |
| Pamela Reed | 15 % |

Total = 100%

Proceed to Question 12.

**Question 12:**

Only answer this question for those parties whom you answered "Yes" for in Question 2.

State the total amount of compensatory damages you award to Shanika Brown for injuries sustained as a result of the incident.

Shanika Brown $ 10,600,000

State the total amount of compensatory damages, if any, you award to Pamela Reed for injuries sustained as a result of the incident.

Pamela Reed $ 65,000

------------------------------------------------------------------------------------------------------

You have completed this Verdict Form.  The foreperson should sign this Verdict Form
below and notify the Law Clerk that a verdict has been reached.

*Adrain Barton Morris*

JURY FOREPERSON SIGNATURE

Print Name: _Adrain Barton Morris_

Seat No: _10_                          Date: _9-25-18_

5